# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3382

_____

Dan Larry Pennington, Individually and on Behalf of a Class of Similarly Situated Individuals; Norma Bryant, Individually and on Behalf of a Class of Similarly Situated Individuals; Aaron Parish Black, Individually and on Behalf of a Class of Similarly Situated Individuals, As Trustee of Ralph J and Reba J Family Trust and Reba J Parish Trust

*Plaintiffs - Appellants*

v.

BHP Billiton Petroleum (Fayetteville), LLC; MMGJ Arkansas Upstream, LLC

*Defendants - Appellees*

Merit Energy Inc; BHP Billiton Petroleum (Arkansas)

*Defendant*s

Tim Griffin, Attorney General, State of Arkansas, ex rel

*Intervenor*

_____

No. 25-1428

_____

Gary Flowers, Individually and on behalf of all others similarly situated; Debbie Flowers, Individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

Flywheel Energy Production LLC; Merit Energy Company, LLC; Riverbend Oil & Gas VIII LLC, originally named as Riverbend Oil & Gas VII LLC

*Defendants - Appellees*

_____

No. 25-1462

_____

Darrell Oliger, Co-Trustee of the Darrell and Carol Oliger Revocable Trust Dated June 19, 2007, Individually and on Behalf of all Others Similarly Situated; Carol Oliger, Co-Trustee of the Darrell and Carol Oliger Revocable Trust Dated June 19, 2007, Individually and on Behalf of all Others Similarly Situated; Puloma Properties LLC, Individually and on behalf of all others similarly situated; LGTD Investments LLC, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

Glendon Bryant, Individually and on Behalf of a Class of Similarly Situated Individuals

*Plaintiff*

v.

Flywheel Energy Production LLC

*Defendant - Appellee*

_____

No. 25-1463

_____

-2-

Larry W. Eubanks, Individually and on behalf of all others similarly situated; Carolyn D. Eubanks, Individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

Flywheel Energy Production LLC; XTO Energy, Inc.

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

————————

Submitted: January 13, 2026
Filed: August 3, 2026

————————

Before L.R. SMITH, ERICKSON, and KOBES, Circuit Judges.

————————

L.R. SMITH, Circuit Judge.

This consolidated appeal[1] concerns the interplay between private oil-and-gas leases and Ark. Code Ann. § 15-72-305, which provides for statutory royalties in the Arkansas oil-and-gas industry. The parties[2] dispute whether the statutory royalties

---

[1]On April 16, 2025, the Clerk of Court granted Flywheel Energy Production, LLC's (Flywheel) motion to consolidate Case Numbers 25-1428, 25-1462, and 25-1463. We grant Flywheel's motion to consolidate Case Number 24-3382 and deny the appellants in Case Numbers 25-1428, 25-1462, and 25-1463's motion to supplement the record with materials from Case Number 24-3382 as moot.

[2]Appellants are Gary Flowers; Debbie Flowers; Darrell Oliger and Carol Oliger, Co-Trustees of the Darrell and Carol Oliger Revocable Trust Dated June 19,

replace the first 1/8 royalties that are owed under the relevant private leases. The district court granted summary judgment for Appellees, concluding that they do. We reverse.

## I. *Background*

Appellants own oil, gas, and other mineral interests in Arkansas. They lease these mineral interests to Appellees through private oil-and-gas leases. Appellees are either oil-and-gas lessees, also referred to as "working interest owners," or operators. Operators are responsible for producing, marketing, and selling the pumped natural gas and distributing royalty payments to lessors. The relevant lease agreements allow Appellees to extract oil and gas from Appellants' land. In exchange, Appellees owe royalties to Appellants. Appellees do not dispute that the relevant leases unambiguously require them to pay royalties based on gross proceeds. In other words, the leases instruct Appellees to calculate royalty payments without deducting post-production costs.

In some circumstances, mineral interest owners are required by state law to allow operators to extract oil and gas from their land. This typically occurs when an operator obtains leases for most of the acreage in a designated oil production unit but cannot secure leases from all the mineral interest owners in that unit. Mineral interest owners who do not lease their mineral interests, but are nonetheless required to allow operators to extract oil and gas from their land, are considered "integrated" or "force pooled" by Arkansas law. Here, Appellants voluntarily leased their mineral interests and thus were not integrated owners.

---

2007; Puloma Properties LLC; LGTD Investments LLC; Larry W. Eubanks; Carolyn Eubanks; Dan Larry Pennington; Norma Bryant; and Aaron Parish Black. Appellees are Flywheel; Merit Energy Company, LLC; Riverbend Oil & Gas VIII LLC; XTO Energy, Inc.; BHP Billiton Petroleum (Fayetteville), LLC; and MMGJ Arkansas Upstream, LLC.

In 1985, long before the parties entered into the relevant lease agreements, the Arkansas legislature enacted Ark. Code Ann. § 15-72-305, which states in relevant part:

> [(a)](3) One-eighth (1/8) of all gas sold on or after the first day of the calendar month next ensuing after March 6, 1985, from any such unit shall be considered royalty gas, and the net proceeds received from the sale thereof shall be distributed to the owners of the marketable title in and to the leasehold royalty and royalty as defined under § 15-72-304(d). . . . Unless all royalty owners within the drilling unit agree to a different method for distribution of the royalty, the distribution shall be coordinated by the operator of the well as follows:
>
> > (A)(i) Within thirty (30) days of the receipt of the proceeds from gas sales, each working interest owner shall furnish to the working interest owner designated as operator, in a form acceptable to the operator, the following information:
> >
> > > (a) The names and addresses of all owners of royalty under the working interest owner's leasehold interests;
> > >
> > > (b) Each royalty owner's tax identification or Social Security number and any other information needed to meet the requirements of the Internal Revenue Service or other governmental agencies; and
> > >
> > > (c) The fractional or decimal interests in the unit of each tract in which interests are owned and each royalty owner's fractional or decimal interest therein.
>
> .   .   .
>
> > (B)(i) Commencing no later than six (6) months after the date of first sale, and thereafter no later than the earlier of thirty (30) days after first payment is received or thirty (30) days after the sixty-day period within which the first purchaser is to make payment pursuant to §§ 15-74-501 and 15-74-601—15-74-603, or a total of ninety (90) days after the end of the calendar month within which subsequent production is sold, each working

interest owner or marketing party who has sold gas shall remit or cause to be remitted to the operator one-eighth (1/8) of the revenue realized or royalty moneys from gas sales computed at the mouth of the well, less all lawful deductions, including, but not limited to, all federal and state taxes levied upon the production or proceeds and shall indemnify and hold the other working interest owner free from any liability therefor. . . .

Despite § 15-72-305(a)(3)'s directives, lessees, including Appellees, made royalty payments based on the relevant leases' language. Thus, here, Appellees paid royalties that were calculated using gross proceeds as the leases had instructed. But in May 2019, Flywheel—the operator for all the relevant leases—began deducting post-production costs from Appellants' first 1/8 royalty, citing Ark. Code Ann. § 15-72-305. Specifically, Flywheel relied on the phrase "net proceeds" in subsection (a)(3). These cost deductions reduced the royalty payments to Appellants.

Not willing to accept the royalty reduction, Appellants sued Appellees alleging, among other things, that Appellees breached their royalty payment obligations under the leases. Nonparty lessors also filed similar lawsuits against lessees and operators. The same district court presided over all the cases and would, on occasion, cross-reference its rulings and explanations between the cases.

One such similar case was *Hurd v. Flywheel Energy Production, LLC*, No. 4:21-CV-01207. There, the plaintiffs sued Flywheel, alleging that it had wrongfully deducted post-production costs from the first 1/8 royalty payments in violation of their private lease obligations and Arkansas law. Flywheel contended that it was entitled to make the deductions pursuant to Ark. Code Ann. § 15-72-30. The district court issued an order certifying the following question to the Arkansas Supreme Court:

Does Arkansas Code Annotated section 15-72-305 allow the deduction of post-production expenses from proceeds earned by the sale of "royalty gas," as that term is used in section 15-72-305(a)(3), notwithstanding the fact that a recipient of the resulting royalty

payment has entered into an oil-and-gas lease that would disallow such deductions if said royalty payment had arisen directly from that oil-and-gas lease?

*Hurd v. Flywheel Energy Prod., LLC*, No. 4:21-CV-01207, 2023 WL 3687166, at *4 (E.D. Ark. May 26, 2023). In the order, the district court explained that in its view, Ark. Code Ann. § 15-72-305 allows for post-production expenses to be deducted from the first 1/8 royalties. Nonetheless, the district court believed that the Arkansas Supreme Court "should have the right of first refusal on answering these questions." *Id.* at *5. The Arkansas Supreme Court declined to answer the questions. Given the Arkansas Supreme Court's declination, the district court granted summary judgment in Flywheel's favor on the plaintiffs' royalty-underpayment claims. *See Hurd v. Flywheel Energy Prod., LLC*, No. 4:21-CV-01207, 2023 WL 5669094 (E.D. Ark. July 25, 2023).

A few months later, the Arkansas Court of Appeals decided *Flywheel Energy Production, LLC v. Arkansas Oil & Gas Commission*, 678 S.W.3d 851 (Ark. Ct. App. 2023). There, the Arkansas Court of Appeals affirmed the Arkansas Oil and Gas Commission's "order finding that Ark. Code Ann. § 15-72-305(a)(3) *does not* require the deduction of postproduction expenses." *Id.* at 862 (emphasis added). The Arkansas Supreme Court denied Flywheel's request to review that decision.

Naturally, the *Hurd* plaintiffs moved for the district court to reconsider its summary judgment order. They argued that the Arkansas Court of Appeals' *Flywheel* decision constituted a change in the law that entitled them to summary judgment in their favor. In ruling on the plaintiffs' motion for reconsideration, the district court acknowledged that the *Flywheel* decision "diverged dramatically" from the district court's summary judgment decision. *Hurd v. Flywheel Energy Prod., LLC*, No. 4:21-CV-01207, 2024 WL 4571445, at *1 (E.D. Ark. Oct. 24, 2024). The district court also noted that "[t]he Arkansas Court of Appeals' decision was—at least potentially—a major development" and "is persuasive evidence of how [the relevant] issues should be resolved under Arkansas law." *Id.* But ultimately, after

acknowledging its *Erie*[3] obligations to follow state substantive law and to "adopt the state intermediate appellate court decision as state law" "absent unusual circumstances," the district court denied the plaintiffs' motion for reconsideration. *Hurd*, 2024 WL 4571445, at *16. It declared that *Flywheel* was not the best evidence of how the Arkansas Supreme Court would interpret Ark. Code Ann. § 15-72-305(a)(3). Instead, the district court concluded that the Arkansas Supreme Court would interpret "'net proceeds' in section 15-72-305(a)(3) to allow deduction of post-production expenses before royalty calculations are made." *Hurd*, 2024 WL 4571445, at *15.

The district court also granted summary judgment for Appellees in the cases at hand, citing its analyses from the *Hurd* orders.[4] Appellants appeal the district court's judgments.

While Appellants' appeals were pending and before our oral arguments, the Arkansas legislature enacted Arkansas Act 1024, entitled "An Act to Amend the Law Regarding Oil and Gas Production and Conservation; To Clarify the Allocation of Production and Cost Following Integration Order by Defining 'Net Proceeds'; *To Address* Obligations of Operators and Working Interest Owners to Mineral Owners; and for Other Purposes." Act 1024, 2025 Ark. Acts 1024 (all caps omitted). The Act is subtitled "To Amend the Law Regarding Oil and Gas Production and Conservation." *Id.* (all caps omitted). In relevant part, Act 1024 states:

> SECTION 2. Arkansas Code Title 15, Chapter 72, Subchapter 3, is amended to add an additional section to read as follows:
>
> 15-72-325. Obligation of operators and working interest owners to mineral owners—Definition.

---

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[4] Appellants moved to supplement the record with materials from *Hurd* because the district court explicitly relied upon materials from that case in the summary judgment orders now on appeal. We grant Appellants' motion.

(a) As used in this section, "net proceeds" means:

(1) If a mineral interest within a drilling unit is an integrated interest not covered by an executed lease, the gross proceeds from the sale of gas, including royalty gas, minus applicable taxes, assessments, and true third-party costs or costs specifically allowed by the form lease adopted by the Oil and Gas Commission; and

(2) If a mineral interest within a drilling unit is covered by an executed lease, the gross proceeds from the sale of gas, including royalty gas, *minus applicable tax, assessments, and charges or deductions specifically allowed by the terms of the lease*.

. . .

(c)(1) The minimum royalty payable to royalty owners from the production of gas shall be one-eighth (1/8) of the net proceeds from the sale of gas.

(2) A mineral owner may negotiate a higher royalty with a lessee by contract.

(d)(1) If a mineral interest within a drilling unit is covered by an executed lease, then the working interest owner or owners of the respective lease is or are responsible for ensuring the full amount of royalties are paid to a royalty owner in compliance with the terms of the lease regardless of whether the payments are made by the operator or, if applicable the nonoperating working interest owner or owners that is or are a party to the lease.

(2) If deductions or expenses are taken by the operator or the nonoperating working interest owner or owners that is or are a party to the lease that are not in accordance with the lease terms, including deductions and expenses pertaining to royalty gas, then the deductions or expenses not specifically allowed by the applicable lease shall be reimbursed to the royalty owner within thirty (30) days of the deduction being taken from the royalty payment of the royalty owner.

*Id.* (emphasis added).

## II. *Discussion*

On appeal, Appellants argue that the district court erred when it granted summary judgment to Appellees. Specifically, they contend that the district court erred in its interpretation of Ark. Code Ann. § 15-72-305.[5] We agree.

"We review a district court's interpretation of state law de novo. In interpreting state law, we are bound by the decisions of the state's highest court." *Cnty. of Ramsey v. MERSCORP Holdings, Inc.*, 776 F.3d 947, 950 (8th Cir. 2014) (citation modified). "When there are no such decisions on point, we predict how a state's highest court would decide an issue by looking to other reliable indicators of state law, including the decisions of other state courts, decisions in analogous cases, and considered dicta." *Hunter v. Page Cnty.*, 102 F.4th 853, 866 (8th Cir. 2024). "Although federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive." *First Tenn. Bank Nat'l Ass'n v. Pathfinder Expl., LLC*, 754 F.3d 489, 490–91 (8th Cir. 2014) (quoting *Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189, 1196 (8th Cir. 1992)). Indeed, "[i]ntermediate state court decisions should not be disregarded unless we are convinced by other persuasive data that the highest state court would decide the issue otherwise." *United Fire & Cas. Ins. Co. v. Garvey*, 328 F.3d 411, 413 (8th Cir. 2003) (citation modified). Additionally, an agency's interpretation of a statute is "one of our many tools used to provide guidance." *Myers v. Yamato Kogyo Co.*, 597 S.W.3d 613, 617 (Ark. 2020).

---

[5]Appellants also argue that the district court's interpretation of Ark. Code. Ann. § 15-72-305 results in violations of their rights under the United States and Arkansas Constitutions and the Arkansas Deceptive Trade Practices Act. Because we conclude that the district court erred in its interpretation, we need not address these issues. Moreover, we need not discuss Appellants' unjust enrichment argument because we conclude that they are entitled to relief under the lease agreements. "[T]he concept of unjust enrichment has no application when an express written contract exists." *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005)

The Arkansas Supreme Court has not interpreted Ark. Code Ann. § 15-72-305. Therefore, we must predict how it would do so. Arkansas's "rules regarding statutory construction are clear and well established." *Holbrook v. Healthport, Inc.*, 432 S.W.3d 593, 596 (Ark. 2014). "The basic rule of statutory construction is to give effect to the intent of the legislature." *Id.* "If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation." *Id.* at 597. But "[w]hen a statute is ambiguous, [the Arkansas Supreme Court] must interpret it according to legislative intent and [its] review becomes an examination of the whole act." *Id.* The Arkansas Supreme Court

> has held that although it is hesitant to interpret a legislative act in a manner contrary to its express language, it may do so when it is clear that a drafting error or omission circumvents legislative intent. To that end, [the Arkansas Supreme Court] has acknowledged that subsequent amendments to a statute may be helpful in determining legislative intent.

*Rikard v. State*, 123 S.W.3d 114, 121 (Ark. 2003) (citation modified); *see also Arkansas Cnty. v. Desha Cnty.*, 27 S.W.3d 379, 383 (Ark. 2000) ("As further evidence of the legislature's intent, we may also consider subsequent amendments to statutes.").

Applying these various holdings, we predict that the Arkansas Supreme Court would conclude that "net proceeds" as used in Ark. Code Ann. § 15-72-305(a)(3) is ambiguous. Specifically, the legislature's use of "net"—as opposed to "gross"—clearly contemplates some form of a deduction. But the statute's language does not plainly state what deduction(s). The statute also does not specify whether a written lease covering the drilling unit affects the contemplated deductions.

The district court predicted that the Arkansas Supreme Court would conclude that Ark. Code Ann. § 15-72-305 unambiguously allows for the deduction of post-production expenses before royalty calculations are made. It made this prediction

based largely on the descriptive phrase "mouth of the well" in Ark. Code Ann. § 15-72-305(a)(3)(B)(i). The district court reasoned:

> The Arkansas Court of Appeals appears to have decided that [§ 15-72-305(a)(3)(B)(i)] was irrelevant because it governs what the working interest owner remits to the operator, whereas the "net proceeds" subsection governs what the operator remits to the landowner. But the fact that the two subsections govern different relationships is of no moment because the relationships are intertwined and dependent on each other.

> The operator is the middleman between the working interest owner and the landowner. In addition to the operator's responsibility for extracting the gas, section 15-72-305 charges the operator with the duty to collect and distribute royalty funds—essentially a bookkeeping function for the benefit of working interest owners and landowners. If section 15-72-305(a)(3)(B)(i) were interpreted to allow working interest owners to deduct more post-production expenses from the payments they remit to the operator than the operator could deduct from the payments that it distributes to the landowners, the operator would have to dip into its own pocket to pay the landowners for the post-production expenses withheld by the working interest owners. Put another way, interpreting the "net proceeds" language in section 15-72-305(a)(3) to allow fewer deductions than those allowed by the "mouth of the well" language in section 15-72-305(a)(3)(B)(i) would result in post-production costs being borne by the operator—essentially a neutral, nonparty bookkeeper—rather than either party to the relevant mineral-rights lease. This would be, in a word, absurd.

> "[C]omputed at the mouth of the well" must therefore be read as providing a floor for what can be deducted under the "net proceeds" language. But the Arkansas Court of Appeals' decision did not grapple with the "mouth of the well" language and how that language informs the interpretation of "net proceeds." So the decision is unlikely to be the best evidence of how the Arkansas Supreme Court would approach the "net proceeds" interpretive question.

*Hurd*, 2024 WL 4571445, at \*8–9 (alteration in original) (footnotes omitted). Appellees echo this argument.

We conclude that Ark. Code Ann. § 15-72-305(a)(3)(B)(i) does not render "net proceeds" unambiguous. Indeed, that subsection highlights ambiguities in the statute. As another Eastern District of Arkansas court explained,

> Ark. Code Ann. § 15-72-305 contains a latent ambiguity. The "net proceeds" an operator must pay are undefined. The category is clear but its contents are not. The related provision about what a working interest owner must pay an operator clarifies some things but not every thing: "all lawful deductions" may be made, "including, but not limited to," state and federal taxes. Ark. Code Ann. § 15-72-305(a)(3)(B)(i). The statute's approved list of deductions specifies taxes. The list includes other things, too—lawful deductions. But what else is on the General Assembly's approved list? The statute does not tell us.

*Flywheel Energy Prod. LLC v. York*, 794 F. Supp. 3d 575, 581 (E.D. Ark. 2025). The Arkansas Court of Appeals also found that the statute's language is ambiguous. *See Flywheel*, 678 S.W.3d at 860 ("We disagree with Flywheel's assertion that this statute is unambiguous and hold that the statute is, in fact, ambiguous, requiring us to resort to alternate means of interpretation.").

Next, we predict that the Arkansas Supreme Court would conclude that, where there is an executed lease, the term "net proceeds" as used in Ark. Code Ann. § 15-72-305(a)(3) does not permit deductions beyond those that are specifically allowed by the lease. As noted above, we have several tools at our disposal to assist us in statutory interpretation, including other courts' decisions, agency decisions, and subsequent amendments to the statute. Here, we deem the subsequent amendment, Act 1024, which defined the term, the most useful tool in interpreting "net proceeds" as used in Ark. Code Ann. § 15-72-305(a)(3).

-13-

The parties do not dispute that we may consider Act 1024 when interpreting Ark. Code Ann. § 15-72-305.[6] They do, however, disagree as to how it should be considered. Appellants argue that Act 1024 simply clarifies the long-held understanding that Ark. Code Ann. § 15-72-305(a)(3) does not supersede private lease terms. They contend that because Act 1024 only clarifies the original intent of Ark. Code Ann. § 15-72-305(a)(3), it can be used to ascertain the meaning of the statute as it existed when the deductions at issue were taken. Appellees, on the other hand, argue that Act 1024 goes beyond clarification and substantively changes Ark. Code Ann. § 15-72-305(a)(3). They contend that before Act 1024, Ark. Code Ann. § 15-72-305(a)(3) unambiguously permitted post-production deductions, regardless of whether the mineral interests were leased. Appellees argue that Act 1024 changes that rule.

Under Arkansas law, "[s]ubsequent Acts amending existing statutes may in certain instances clarify the original intent of the General Assembly in those earlier statutes." *Fimpel*, 911 S.W.2d at 953. For example, in *Nathaniel v. Forrest City*

---

[6]An Eastern District of Arkansas court "preliminarily enjoin[ed] Alan York (acting in his official capacity as the Director of the Arkansas Oil and Gas Commission) from enforcing Act 1024 against Flywheel Energy Production, LLC, Van Buren Energy Production, LLC, Razorback Production, LLC, and CAER Energy, LLC on any mineral lease signed before 5 August 2025." *Flywheel*, 794 F. Supp. 3d at 585. That injunction does not affect our decision for two reasons. First, this is not a case where York is attempting to enforce Act 1024 against the named entities. Second, the injunction was premised on a "preliminary *Erie* prediction . . . that the Arkansas Supreme Court would construe the current version of Ark. Code[] Ann. § 15-72-305 to allow for deduction of post-production expenses in calculating the one-eighth statutory royalty for all mineral owners in integrated units," which we reject. *Id.* at 582.

Moreover, although the Arkansas legislature's passing of Act 1024 was not discussed in every party's brief—likely due to the timing of its enactment—its effect was discussed during both oral arguments for these appeals. No one objected to the court's consideration of Act 1024. Nor could they successfully do so. As we discuss below, Arkansas law permits clarifying amendments to be used to discern the original intent of the legislature in the earlier statute. *See Fimpel v. State Auto. Mut. Ins. Co.*, 911 S.W.2d 950, 953 (Ark. 1995).

*School District No. 7*, teachers sued their school district for a declaratory judgment construing Ark. Code Ann. § 6-17-203. 780 S.W.2d 539, 539 (Ark. 1989). The relevant portion of the statute stated that "[t]he classroom teacher members of each district's committee on personnel policies shall be elected by a majority of the classroom teachers employed in the district by secret ballot in an election *conducted by the teachers*." *Id.* at 540 (quoting Ark. Code Ann. § 6-17-203(b) (1987)). The parties disagreed about the administration's role in the elections, and the trial court agreed with the school district's interpretation of the statute. *Id.* at 540. During the pendency of the appeal, the Arkansas legislature passed Act 56 of 1989, "which amended the 1987 act to provide, in pertinent part: 'The election shall be *solely and exclusively conducted by the classroom teachers, including the distribution of ballots to all classroom teachers*.'" *Id.* (quoting Ark. Code Ann. § 6-17-203 (Supp. 1989)). The Arkansas Supreme Court concluded that "[t]he 1989 amendment made it unmistakably clear that the General Assembly intended for the election to be conducted by the teachers; not the administration, and not the teachers with the help of the administration." *Id.*

Like the 1989 amendment in *Nathaniel*, Act 1024 clarifies the original intent of the Arkansas legislature. As we explained above, Ark. Code Ann. § 15-72-305(a)(3) was ambiguous. It was clear that deductions could be made, but the parameters of the deductions were obscure. The Arkansas legislature, through Act 1024, resolved the ambiguity by clarifying that when a mineral interest is covered by a lease, the deductions must be consistent with the lease.

Appellees' arguments that Act 1024 substantively changes Ark. Code Ann. § 15-72-305 are unpersuasive. Such arguments rely on an interpretation of Ark. Code Ann. § 15-72-305 that would unambiguously permit post-production deductions regardless of any lease's provisions. But § 15-72-305 never relieved a working interest owner's obligation under a lease. The 1/8 royalty was always required to be paid according to the lease. Act 1024 clarifies—not changes—how the 1/8 royalties are made under Ark. Code Ann. § 15-72-305. *But cf. Families, Inc. Dir., Dep't of Workforce Servs. Emp. Contribution Unit*, 505 S.W.3d 217, 220 (Ark.

-15-

Ct. App. 2016) ("The amendment relaxes the standard for proving that workers are independent contractors and significantly alters the criteria used to determine whether a worker is an employee or an independent contractor. This is a substantive change.").

Additionally, the Arkansas Oil and Gas Commission's and the Arkansas Court of Appeals' interpretations of Ark. Code Ann. § 15-72-305 support reversal. The Commission and the appeals court interpreted § 15-72-305 consistently with the legislature's subsequent clarification. As we noted above, an agency's and intermediate court's interpretations of their state's laws are tools that we may use when faced with the same task. *See Myers*, 597 S.W.3d at 617; *United Fire*, 328 F.3d at 413.

Lastly, *Hanna Oil & Gas Co. v. Taylor*, 759 S.W.2d 563 (Ark. 1988), does not change our *Erie* prediction. In *Hanna*, the parties litigated whether an oil and gas lease permitted post-production deductions. *Id.* at 564. The lease stated that "Lessee shall pay Lessor one-eighth of the proceeds received by Lessee at the well for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee." *Id.* The Arkansas Supreme Court concluded that under the lease's clear language, "proceeds" did not include post-production deductions. *Id.* at 565. It also stated, in a sentence now relied upon by Appellees, that "[i]f it had been their intention to do so, they would have made some reference to costs, or 'net' proceeds." *Id.* But *Hanna* is not as useful as Appellees contend. Notably, it does not discuss Ark. Code Ann. § 15-72-305. The language that the *Hanna* parties agreed to is different from the language that the Arkansas legislature used in Ark. Code Ann. § 15-72-305. Accordingly, the addition of "net proceeds" to the *Hanna* lease would have been read in a different context than Ark. Code Ann. § 15-72-305. Considering the Arkansas Court of Appeals' interpretation, the Arkansas Oil and Gas Commission's interpretation, and the legislature's clarifying amendment, we conclude the Arkansas Supreme Court's *Hanna* decision—which does not mention Ark. Code Ann. § 15-72-305—is less helpful.

III. *Conclusion*

For these reasons, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

_____